So we have three cases this morning. I'm not going to say they're the same, but they're very similar. 524-09-02, Man et al. versus Quad-Ready Mix Corp. and then 524-09-03, Southerland versus Quad-Ready Mix Corp. The third one is 524-09-04, Dana Wicks, if I pronounced that correctly. Quad-Ready Mix Corp. And the first two cases, I've got Mr. Van Dorn and I've got Mr. Price and Mr. Rich involved with those. I think the clerk spoke with you before about how you all kind of want to proceed with these cases. I personally and Justice Cates and Justice Fong can let us know their thoughts. You know, time's limited and whatnot, so I don't know if we necessarily need a recitation of facts unless there are very specific facts to each case because I believe from reading the briefs, the issues are, if they're not the same, they are very, very similar. And I'm not trying to keep you all from having your full time, but just to be fair and honest, I don't know if we need to hear 30 minutes of one side and 30 minutes of the other, but we'll give you plenty of time. So if you want to kind of take the first two and talk about those, that's perfectly fine. Mr. Price and Mr. Rich, are you going to split time? How are you all going to do your oral argument? I think the time being, Your Honor, will play on me doing basically everything. I highly doubt it's going to take the entire 15 minutes to do what I'm supposed to do. Well, again, we're not trying to cut anybody short by any means. We want to make sure you have all the time you need to get your arguments before us. So anything that I've said, I'm not trying to keep you all from having your full time. I think we can streamline the process a little bit today and make it a little easier on everybody. And Mr. Price, correct? Yes, Your Honor. Okay. I just want to make sure. All right. With all that being said, Mr. Van Dorn, are you ready for your argument? I am, Your Honor. And just so I'm clear on this, too, I had plans to be able to make all my argument on all three in my 15 minutes because I do think the pertinent issues are applied equally. That's how I plan to proceed if it's okay with the Court. Absolutely. And like I said, if we go a little over, we're all good. Okay. May it please the Court. Good morning, Justice Gates. Good morning. Eric Van Dorn for Appellant Quad County Ready Mix in these three matters. The question presented to the Court is a very straightforward one, and it is one that's been ruled on by the Allman Supreme Court three times. And the question is, if a plaintiff brings a claim, a case for purely economic loss, as we have here, can they bring claims for breaches of implied warranties when they don't have a contract with the defendant? That's the issue presented. The Allman Supreme Court has addressed that question, starting with the Sajma case in 1986, then the Roth case in 1988, and the Siena case in 2018. Each time the Court answered that question the same, and each time the Court answered that question clearly, and the answer was, a plaintiff cannot bring a claim for breach of implied warranties when they're claiming only economic loss and they have no contract with the defendant. They may have other claims, but they can't bring claims for breaches of implied warranty. The pertinent facts are the same for all three cases. All three were filed in Marion County, Illinois, by homeowners who hired a general contractor, so not Quad County, they hired general contractors to do certain work, put in patios, outdoor things that required some concrete. And so in each case, the general contractor then contracted with Quad County ReadyMix to supply the concrete. In each of those cases, the general contractors are the ones who contracted with the plaintiff. In each case, Quad County had no contracts with the homeowners. In all three cases, the counts are the same against Quad County. Count one in all three is a claim for breach of the implied warranty of merchantability. Count two is a claim for breach of the implied warranty of fitness for a particular purpose, and count three is under the Illinois Consumer Fraud Act. This appeal does not relate to the Illinois Consumer Fraud Act count. In all the cases, Quad County filed motions to dismiss under 2619 because the claims are barred by other affirmative matter avoiding the legal effect or defeating the claim, that's 619A9. And in all three cases, Quad County supported those motions with an affidavit of one of the principals at Quad County, and in those affidavits, that Principal Daffiant said Quad County has no contracts with these homeowners. Quad County was not paid by these homeowners. And in each of those cases, those affidavits are unopposed. So the record on appeal is that we have those affidavits. We don't have any opposition to them. Those are sort of the very broad facts of the case. The law, again, is pretty straightforward, and it starts with the Sajna case in 2000, sorry, in 1986. And in that case, the plaintiffs alleged that certain automobiles that they bought had defective transmissions. In each of these cases, I'm going to cite the fact, the ultimate fact pattern is the same. There's a plaintiff who claims some type of economic loss. They did not have a contract and brought implied warranty cases, claims. And that was the case in Sajna. The Sajna plaintiff sued GM because of these allegedly defective transmissions in their cars. They brought implied warranty claims. The plaintiffs, and here's what the Supreme Court said, the plaintiffs court urges this court to abolish the privity requirement in suits for of an implied warranty when a plaintiff seeks recovery for economic loss. Exactly the same issue here. And the court's holding was very plain and very straightforward. It said, we decline to abolish the privity requirement in implied warranty economic loss cases. And again, the elements there are only economic loss. The court was clear that a different result may hold in a personal injury case. There are circumstances in which a plaintiff can bring an implied warranty claim if they're alleging personal injuries. But when it's only economic loss, you can't bring implied warranty claims if there's no contract. That's what the Illinois Supreme Court said then. And then that was followed up to just two years later by the Roth versus Maloney Cadillac case. Again, there the plaintiffs sued an automobile manufacturer, General Motors, because of allegedly defective automobiles. And they brought breaches of implied warranty claims against both GM, the manufacturer, with whom they did not have a contract, and the dealerships they bought the cars from with whom they did have a contract. And there actually the intermediate appellate court found that the plaintiffs could bring claims for breach of implied warranties against General Motors with whom they did not have a contract. That then went to the Illinois Supreme Court, and the Illinois Supreme Court reversed and said that that was error, that ruling was error. And Roth said this, a recent decision in Sanja dictates that we affirm the dismissal of the implied warranty claims against GM, since that count is based solely on implied warranties and they don't have contracts with GM. And the court noted from Sanja that in Sanja we concluded that with respect to purely economic loss, the implied warranties run only between the parties that are in privity of contract. The court rejected the plaintiffs' arguments that there might be exceptions for certain circumstances there. The third time the Illinois Supreme Court considered this issue was in the Sienna case in 2018. Again, a similar fact pattern, although it's even more similar to the case here. This one dealt with a developer of condominiums, and then the individual condominium owners, the condominium owners alleged that there were defects in their homes, not unlike the case here. They sued essentially the developer with whom they did not have contracts, they sued that developer for breaches of implied warranties, sorry, they sued subcontractors, sorry, just like here they sued subcontractors with whom they did not have contracts with. And the issue there was whether, and this sounds just like this case, the issue there was whether, quote, homeowners may pursue a claim for breach of an implied warranty against a subcontractor, which is what we have here. In the Sienna case, the particular implied warranty was the implied warranty of habitability. The previous two cases were implied warranties of merchantability and fitness for a particular purpose, like we have here. But in all three cases, with all three warranties, it didn't matter what kind of conclusion. And so it did in Sienna that you have to have a contract if you want to bring in breaches of implied warranty claims if it's an economic loss situation. And the other thing that the Sienna court did, Your Honor, that I think is important here is it laid out, well, why is that? Why is that the case? Why should there be that difference? And they start with the Mormon doctrine on economic loss, but then they discuss specifically this issue of subcontractors. And they say, quote, subcontractors depend on contract law and their contracts with the general contractor, that is what we have in this case, to protect and define their risks and economic expectations. The subcontractor's fees and costs are set in relation to their liability exposure, which is controlled in turn by their contracts. To allow what is in effect a tort claim, these breaches of implied warranty without a contract, and if they're for economic loss only, to allow what is in effect a tort claim to be brought directly against subcontractors by homeowners would undermine and in some instances render pointless these contractual obligations and restraints. Avoiding this outcome and preserving the distinction between tort and contract law is the principal point of the economic loss doctrine. And so there the Illinois Supreme Court held that the homeowners, quote, may not pursue a claim for breach of an implied warranty against subcontractors where there is no contractual relationship. That is exactly the scenario we have in the case today. There are various, the plaintiffs here, the appellees here, suggest various exceptions to that rule and the Illinois Supreme Court has not recognized exceptions to that specific rule. Again, other outcomes may hold if it's a personal injury case, if it's a case where there are express warranties, in cases with contracts. But three times now in the law in Illinois is, if it's purely economic loss, you have to have a contract in order to bring implied claims for breaches of implied warranties. Mr. Van Doren? Yes. How do you square the Supreme Court decisions with press containment corporation versus the prime bishop? So that was a case that... That's still good law? I don't. That was a case that was decided, of course, before all three cases, but particularly before the seminal case of Sajna. And at that time, this court did not have the benefit of Sajna or the two, Roe Roth or Sierra. In fact, this court acknowledged at the time, in that opinion, that the Illinois Supreme Court had not yet addressed implied warranties in purely economic loss cases. Now the Supreme Court has, and has given us a very clear rule. And so, you know, the various Supreme Court cases, you know, some cite certain lower court cases, some cite law review articles where other exceptions are suggested. And in each case, the Supreme Court has said no to any of those exceptions. Are you just asking us to answer the certified question, or are you asking us to apply the law to the facts in this case? Yeah, that's a great question, Your Honor. Here's what I think, I believe to be true, is that if the court answers the certified question the way we've asked it to be answered, based on the record that we have, there is nothing else to be done but to dismiss those counts. Because we have the facts are unopposed, based on an unopposed affidavit. If we take the facts in the unopposed affidavit, there's only one way to rule on this. So I think both, I think answering the certified question necessarily answers the question of whether they can maintain these claims. As I understood from both parties' briefs, I thought we were limited to just answering the question, but there are fifth district cases and at least two Illinois Supreme Court cases that say it's okay to go ahead and apply. I think that's exactly right. In at least two of them, they upheld the dismissal. They didn't just say, here's the rule we're announcing, it goes back to the trial court for rulings consistent with it. Again, I think we have everything at the trial court level that we need to rule on the motion to dismiss itself because the facts are undisputed. You just said they upheld the dismissal, but that's the opposite of what happened in your case. You asked for dismissal and that was denied, so we would be That's right, but in this case, they actually ruled on the underlying dismissal order itself rather than just ruled on the law and sent it back to the trial court. I don't think it needs to be sent back to the trial court because the pertinent facts are undisputed. Thank you. All right, thank you. Anything else? That is all for my opening. Before we let you go, I have a question in light of this question. Do you believe that we can dismiss the case without allowing the plaintiff any opportunity to amend at the trial court level? Yeah, I think if this court rule is consistent with Sojourner Roth and Siena, then I think there's nothing else to be done based on the record that we have. The only fact it comes down to is, did these homeowners have contracts with Quad County? And the undisputed evidence is that they did not, so there's nothing that can be put around those facts. They would still have count three, though. That's correct. That's absolutely right. Yes. And there's never been a murmur from the plaintiffs that they intend to file any kind of personal injury loss. Is that true? Yeah, I don't think there are any facts that I'm aware of that would support that, and so that is true. Regardless of that, my question is whether or not they would be granted leave to amend their complaint if this were sent back on a Rule 308, as it's been posited here in the court. Yeah, if they came up, I mean, if they happen to have some different damages, like a personal injury cases, just as Kate's pointed out, that would be a different story. And yeah, I would think they would be able to bring that, candidly, because the case law says that you can bring breaches of implied warranty if it's a personal injury. They certainly would be able to do that, but that's not an issue in any other cases at this point. Okay, my only concern is whether or not they would be surprised if we went and dismissed the case. What do you think? It shouldn't be. We've argued this twice, at least twice, at the trial court level, including a rehearing, and then also getting the 308 Order 2, that briefing, and we've been consistent in our position on it and all of those. Well, they still have a claim. If you could answer a question for me. I'm confused by the trial court's order. It says that because there's a jury demand, the court may deny a motion to dismiss a question of fact without prejudice, while there is still a jury demand. I'm not sure what that means. Justice Gates, I don't either. I'm sorry. It wasn't pertinent to my arguments here, and so I just don't know. I'm just wondering what the question of fact was that makes the court feel that that's the issue. Anyway, I didn't understand, and I thought maybe you could add some clarity. I wish I could. Okay. Thank you, Justices. That's all I have. Thank you. Justice Bonner, I think you had a question. I did, if I could remember what my question was. The plaintiffs still have a cause of action or claim against the intermediary. They just don't. They didn't have a contract with your client. Is that accurate? That's exactly right. In Daniel Witt's case, they have now amended their complaint to bring a claim against the general contractor. In the Mann and Sutherland cases, they have chosen not to, but they certainly, I can't see any reason why they couldn't. That's who they contracted with. Okay. Thank you. And that's the case you'll have your rebuttal time. Thank you. Come on up, Mr. Bonner. May I speak to the court, counsel? With regard to the underlying facts of these cases, I don't think that there is much dispute or difference between any of the various circumstances. But what we do take issue with is this characterization of the relationship between Quad County and the plaintiffs as being a subcontractor to a remote homeowner who contracted with a general contractor. Now, to be clear, that very well might be the case, but the relationships between these various parties and intermediaries has not yet been established. And that is what leads us into the first point that we mentioned in our briefs, that this is actually a premature proceeding. We have not cleared up what the relationship is between these intermediaries. And it's our position that the facts and the record as it currently sits, it's every bit as likely that an agency relationship exists. And I don't believe that Quad County is entitled to this inference that they're a subcontractor without having some kind of supporting record. Now, counsel has mentioned the unopposed affidavit. And I think that in the trial court's order that's actually being appealed today, what they say is that when the allegations of a complaint negate the facts in an affidavit in a 619 motion, that the court has discretion to dismiss the 619 or to deny the 619 motion without prejudice when there's a jury trial to meet. And I think that referring to Justice Cates's question, that that's what Judge DeWong was talking about with 735 ILCS 619 paragraph C in the last paragraph of the order. And so that's the first issue. We see that this is premature and that it can't be actually ruled on. And this leads into the next point, and that's that we don't actually... Excuse me, why don't you take the deposition of the affidavits? Well, we have... We made an informal agreement originally back when these cases were filed that we would stay discovery pending the outcome of these motions to dismiss. And we were successful the first time on the first 615 motion, actually. And then we were successful again on the 619 motion, and we had anticipated proceeding of discovery after that. But then the request for 308 order was filed and well, we... I don't think that we were actually stayed, but just based upon our previous agreement to stay discovery pending this issue, we hadn't pressed the matter. And that's the main reason why but... You referenced a moment ago that you don't know if there's an agency relationship, but at present you've not alleged one or pledged one, is that correct? No, and I think that it's a fair criticism of our complaint that we are... We don't actually allege clearly what the relationship is, because I don't think we actually know either at this point. And so, you know, that's something that we do have to be cognizant of going forward as discovery progresses. Because even if the court rules in favor of Quad County on this issue on appeal, we still have the third count for the Consumer Fraud and Deceptive Business Practices Act that will continue and require discovery. So I think that you think we should only answer the question that's certified and not apply that because you still have other discovery you want to complete or other things you need to do. Is that accurate? That's correct, Your Honor. We don't think we're... This is... This proceeding is in a position at this point to be able to answer the certified question, or excuse me, apply the facts to the certified question, because we don't know what these relationships between the plaintiffs and these intermediaries are. And I don't think that... But if there's no privity under UCC and other rulings, how do you get around... Well, that's where... What do you think you're going to find in discovery that would let you proceed further than that? Well, if there's an agency relationship, then that sort of negates the privity issue, because contracting with the agent is the same as contracting with the party individually. And beyond that, this is where the Crest Container Court case comes in. This is a 5th District case, and there are similar cases that apply the same privity exception. And I know the 1st District, and I believe the 2nd District. I think there's a case called Frank's Maintenance. I haven't cited it in the brief. And another one, Rhodes Pharmacole. I think it's... They're either both 1st District cases, or one's 1st and one's 1st District. They apply the same privity exception, where when a remote manufacturer knows the identity of the ultimate recipient of a product, and where they manufacture a product to meet specific requirements of that remote purchaser, that that is an exception to this narrow... That is a narrow exception to the privy requirement under the UCC. And that goes to why we actually think that the certified question misstates the legal issue. We don't contest that in almost all situations, privy is a requirement to pursue these implied warranty claims, barring personal injury damages. But what we have is a very narrow exception laid out in Crest Container Corp. And there hasn't been an argument that the Crest Container Corp. exception would not apply. It's just that the Crest Container Corp. exception is no longer good law, because apparently it has been overruled by the Zana case, is how I've been pronouncing it. But the Zana case makes no mention of this Crest exception, or the Franks Maintenance and Rhodes Pharmacole exception. And it's worth noting that the case from the 1st District that was appealed to the Supreme Court, the 1st District ruling in Zana that was appealed to the Supreme Court, I mean, actually cites to the Crest Container Corp. case. The Supreme Court knew about this exception at the time it ruled in Zana. And, well, we disagree with counsel for Quad County. We think that if the Supreme Court intended to overrule this exception, then they would have said so in their opinion. Now, the other thing... Your complaint is a long way from pleading the special exception that's set forth in those cases you cited out of the 1st District. And that's true, Your Honor. Being honest, I don't think that we were contemplating Crest Container Corp. when we drafted the complaint. And, you know, that might be the basis for us to have to amend later. But nonetheless, what we're here today is arguing an order from the circuit court that denied a 619 motion. And in 619 motions, of course, the non-moving party's entitled to every inference. And since we were given every inference, I think that Judge Long, well, gave us the inference. And that under the allegations in our complaint, it does plausibly meet the Crest Container Corp. exception. And so that's a fair criticism of the... No, I think you answered my question that I asked before about the order and why the judge said that there was still a fact. And the facts, you're talking about this agency relationship that remains a question mark in your mind? Well, it's just a relationship between the purchasers and the intermediary between Watt County. You know, I can't sit here and say that it's not a general contractor or subcontractor, but I can say that under the record as it currently sits, that has not been established. And as the record currently sits, it's every bit as likely that there is an agency relationship. No written contract has been produced. I don't want to make representations to the court that are wrong, but I don't believe there was ever a written contract between either of the purchasers and the intermediary. And so what we have here is inherently a fact question as to what the relationships between these parties are. And, you know, notwithstanding the fact that we don't dispute that privity is generally a requirement, the relationships of these parties may very well mean that there is privity. I guess I'm back to sort of my question I asked before. If we answer the question in the affirmative, is it your position that we should remand it back to the trial court to rule again on the motion to dismiss, or do you think we should dismiss but with leave to amend and let it go back that way? Because as it's pled right now, as opposing counsel said, there's there's really nothing... Well, I think that even if you answer the affirmative or that certified question in favor of Quad County, there's still going to be further discovery proceedings required to establish this relationship between various parties. And like I mentioned with Justice Cates, we very well might have to amend and be more specific with regards to this press discovery that's going to be conducted is essentially the same as what would be for these implied warranty counts, then... Well, we would be in a position to amend the complaint and make more definite allegations as to the relationships once we've actually conducted that discovery. And so that's what I would say, even if you were to rule in favor of Quad County, that further discovery is still required. Does that answer your question? I think so, yes, thank you. Okay, all right. Okay, I think the last thing I want to hit on was the Sienna case. We don't actually think that Sienna really is applicable to the present situation. Sienna implied the implied warranty of habitability, which is a common law concept created by the courts, whereas we have the implied warranties of habitability and merchantability that we are dealing with in present cases, which are statutory under the UCC. These are two separate bodies of law, and beyond that, we've got no implications with regards to the Crest exception or, you know, one of the exceptions from the First District, Franks or Rhodes. And beyond that, reading the opinion, the status of the parties in the Sienna case is also not analogous to what we have here. In the Sienna case, yeah, there was the privity issue that was discussed, but the party, the role of the party, for purposes of the opinion, was not just a subcontractor, it was a subcontractor of a subcontractor. And the plaintiffs in that case were not the developer and was not the people that purchased the condominiums, it was actually the condominium association. So we had an entity not in existence at the time the contract was originally signed trying to sue a subcontractor of a subcontractor. And respectfully, we don't actually think that the principles in Sienna apply. Do you agree that this is just an economic loss case, or do you believe there's some of the theory that might be developed out there also? Well, I mean, outside of statutory damages that we have brought under the Consumer Fraud and Business Practices Act, yes, I believe we can see it's solely economic damages. I think I'm going to, before we let you go, just in case, do you have any final questions? No, thank you. Thank you, thank you. All right, thank you. Mr. Perugino? Yes. Will we be hearing from the second half of the grant? How are we doing? That's a good question. Go right ahead. Obviously, whatever your honors want to do, I would be fine with just taking my five minutes to rebut that, and then five minutes to rebut the annuance, and not taking any other sort of internal annuance, if that works. Well, I guess if it works for Mr. Carlesi, we're going to have another 12 hours just fine with me here. Then is that okay with Justice Vaughn and Justice Cates? Absolutely. All right. Thank you, and I'll be quick, just want to address a few of those points. So the first thing I heard was this issue of agency. I think that's a red herring here. The relationship between these parties is very straightforward. You've got a general contractor, a subcontractor, and a homeowner. The record contains an affidavit that clearly sets out who has contracts with whom and who doesn't. In fact, we included the invoices from Quad County that clearly say they were invoicing the general contractor. No relationship, no contractual relationship with the plaintiffs. That's clear in the record. This Crest container, again, was before the Supreme Court weighed in three times on this very issue. It also, I heard that citing that Crest container case for this proposition that there may be some exception if the subcontractor knows the identity of the homeowners and knows the purpose that they're going to put the products to. That was addressed in the Roth case by the Illinois Supreme Court. In Roth, the plaintiffs made that very argument that the defendant at issue knew of the purpose that the plaintiff wanted the product for, was aware of just the same alleged exceptions that the plaintiff's counsel just suggested. In the Roth court, nonetheless, came to the same conclusion that regardless of that potential knowledge of the end purpose, the rule is the rule. If there's no contract, it's economic loss, no claims for breach of implied warranties. Was the opposing counsel correct that when this all pinned in the outcome of these motions to dismiss? What I can say about that is there's no formal rule and we didn't do any discovery. I honestly just don't have a memory of a conversation where we specifically discussed staying anything. I guess my point is rather than just dismiss it from the appellate court, if they haven't had a chance to develop their case, doesn't it make more sense to remand it back to the trial court to let, if there is discovery to be had or if there are more facts to be discerned or discovered, shouldn't we give them that chance? Yeah, not well. I think the answer there is not on what they've alleged. So we're going by what they've alleged in the complaint and they've alleged exactly what the Illinois Supreme Court said you can't get relief from. There's nothing else that needs to be done to dismiss the claims as they're alleged. Whether they can amend the complaint to, again, somehow make a personal injury claim, whether they can bring some type of other claim, I don't know. But the claim that they brought has, and the facts that have been developed, have been ruled on three times by the Illinois Supreme Court. So I don't think there's anything left to do on the counts as they're pled. I guess our three options are. I'm sorry, Judge. Go ahead, Justice Cates. Well, in that regard, I remain concerned about this language in the order where he says there are facts that preclude him from ruling in your favor. And I'm wondering if those facts are the ones being suggested by the plaintiff that you had this informal agreement that discovery has not been completed on the relationship between the parties, the defendants. Yeah, I understand the question, Your Honor. But I don't have anything that makes me think that's what the court was talking about, mostly because I don't know what that other discovery would be. Again, there may be discovery on the consumer fraud account. There may be discovery if they bring a personal injury case. But the pertinent facts are in the record. And if they're applied to the law, there's nothing to be done specifically just on the claims that are currently brought. So as I look at it, if we answer the certified question in the affirmative, we would have three options. Just apply to dismiss or dismiss with leave to refile or amend or just remand it back to the trial court to rule on the motions and allow discovery to proceed if necessary. Am I seeing the three options correctly? I think that's right. My concern about the middle option with leave to amend is that because we already know the operative facts here, we might end up right back here. Maybe they've taken some discovery, done some depositions, and we're right back here litigating the same argument when there really is nothing else factually to be determined on the specific issue for accounts one and two. Well, you wouldn't be back on the same argument. The issue would be the relationship between the general and the subcontractor, which is not something this court would take up, I don't think. Yeah, I hope we wouldn't be back on the same issue exactly, Your Honor. The agency is not something that's alleged in the complaint. It's not like they've cited cases that say, if we determine you're an agent, there's just nothing in the record either factually or legally to support that at this time. I actually don't know if they can even sustain it under agency facts. But again, the relationships are in the record and are very straightforward and are very similar to the relationships in these other cases. You have two parties, one they have a contract with, one they don't. They can't bring implied claims against the one they don't have a contract with. Nothing in discovery is going to change those facts. I don't see any questions. No more, thank you. Justice Page? No, thank you. All right. Thank you, Your Honor. Thank you, counsel. And just so the record's clear, I think we all know, but I just want to make sure our record's clear. Mr. Terlizzi is involved and that's in the 5.40904 case representing the plaintiffs in that case. And just again, to be clear, Mr. Van Dorn, your arguments in that particular case would be the same as in the other two we just argued, correct? He's right. Perfect. I just want to be clear. And so, Mr. Terlizzi, there you are. Come on up. I'm pleased to report, counsel, I've had the distinct advantage here of being able to plagiarize Mr. Price and Mr. Van Dorn. And now I can plagiarize their oral argument and essentially adopt it. Just a couple brief points I want to emphasize, so I'm certainly not going to take anywhere close to this half hour. Sanja, Rothy, and Sienna, the three cases that appellant relies upon to say that Crest was overruled, essentially, do not deal with Crest. Sanja, four years after Crest was decided, it's hard to contemplate that the Supreme Court wasn't aware of Crest, that the appellee in that case didn't cite Crest. They don't, not only do they not expressly overrule Crest, they don't even attempt to distinguish Crest. Same in Rothy, same in Sienna. I'd also point out in Sienna that the court pointed out that the applied warranty of habitability is in the nature of a tort action, which would mean it had absolutely no relevance to the pending cases here. The other thing I would emphasize is that even if you accept the affidavits, everything they say on there is true, which basically all that says is we were the sub, we had a contract with Tommy Miller, we didn't have a contract with Daniel, which in my particular case. That may be true, but we all know Tommy Miller was a general contractor. He doesn't have those concrete trucks with the rolling drums on that. This is a situation where Quad would have not only known the specific application of their product, but would have come out, done it, determined how much, what type of concrete, where to pour it, and under those circumstances, I think a court, on the admitted facts right now, the trial of fact could find that the Danielowitzes were an intended third-party beneficiary of this contract. If so, they have a right to enforce the contractual rights and obligations that Miller would have had. They obviously, Quad knew their identity, their location, determined what was necessary, went out there and did that. The only thing lacking is a direct obligation of Danielowitz to pay Quad, but that doesn't mean that the third-party beneficiary under 318, did you plead the third-party beneficiary claim under 318? No. It has not been pled at this point. Sorry. It has not been pled, specifically pled at this point. So, I think there's clear distinguishing facts between Crest and if Crest was intended to be overruled, which appellant has to argue that it was, then one of these cases would have surely said that, or at least attempted to distinguish it. That's a Fifth District case. It has not been overruled. It is, the argument that it's been overruled sub salientio is not persuasive given the fact that it was just a couple years after Crest that these cases started coming down. So, we think that there are factual issues that really the appellant's asking for an advisory opinion at this point, which may not become relevant at all if ultimately the court finds some type of privity here based on the standards set forth in Crest. So, that's all I wanted to add. Well, Mr. Trelisi, we have a problem here because the way the certified question is posed, we're supposed to ask whether in order to sustain claims seeking economic loss for alleged breach of implied warranties of marketability or fitness for a particular purpose, does there first need to be privity of contract between the parties under the reasoning of Sojano and Caterpillar, Inc. versus Unisort, citing Sojano? And you and your other appellate counsel want to argue an exception, which is not in the question. Yeah, and that's why I think, you know, when I read essentially, they're asking for an advisory opinion here, which courts, appellate courts, don't do. We don't, certainly you can answer a certified 308 question, yes or no, but you don't give an advisory opinion saying, if this issue becomes determinative later on in the case, this is what you're supposed to answer, trial judge. And that's what we've got here, because we certainly disagree with Mr. Van Dorn that this court, on this record, could simply say dismissed with prejudice. No chance to replete, no nothing. We're determining that this particular plaintiff and this particular defendant did not have privity, could not have, under any circumstance, have had any privity. And to come within the crest exception, and I just don't think, on this record, that's an appropriate decision. But aren't you really asking us to decide whether crest is still good law, which was my original question when we started this morning? Well, yes, good law under a particular set of circumstances that falls within crest. And the, and we think these circumstances fit precisely, even more so, because this is just, this is so specific as far as what the, what the sub, the relationship between the sub and the homeowner here. And it's, Siena doesn't touch this at all, because it's completely different. But this is, this is the sub that, again, that knows the identity, the location, makes the determination of how, I don't know anything about concrete, but what, what's the concrete, where to pour it, how to pour it. But you haven't really alleged that in your complaint. You haven't been so specific in your complaint. Well, I think that's a natural inference. People know that, you know, a general contractor doesn't have the concrete trucks. The concrete company comes out and pours your concrete. Now, maybe the general's out there saying, you know, marked off, saying, this is where the foundation walls go, this is where the driveway goes. I assume they did. But I think it would be certainly common knowledge that it's the concrete company that comes out with the truck and pours the concrete and leaves. And that... Aren't you under an obligation under warrants for a particular purpose to allege all of those facts in your complaint? Well, I think we, I think we have come close, Your Honor, in saying that, you know, that the particular purpose, obviously, of pouring the concrete is to do a concrete job that'll sustain the foundation, the driveway. That's a very particular purpose. And unlike General Motors putting a million cars out there in the market, and they're all, they don't know who's going to buy it, they don't know what they're going to use it for. Completely different set of facts. There's no relationship between General Motors and the consumer, other than, you know, an express warranty, which again would indicate why the court would have said, we're not going to put implied warranties here, you've got an express warranty. None of that fits in this case. So at a minimum, if the court determines to even address the 308 question, we would ask that it be remanded with leave to amend. Any other questions? No other questions, thank you. Justice Cakes? Thank you, Your Honor. Please, counsel. I'll be very brief. This issue about facts relating to the relationships, you know, needing further discovery, or whether they've been played sufficiently or not, Your Honor, I think is a red herring. Roth, first of all, dealt with this issue. There, the plaintiffs alleged, you know, we heard that, well, maybe Quad County knew a particular purpose, they were out there, they were measuring this and that. The one thing we know from the three on the Supreme Court cases is that this is not an issue that is fact-intensive. You know, we've all seen Supreme Court decisions that acknowledge, like, this issue is very factual-based, and so the outcome may be different case-to-case. This is not what the law is here. The law is very simple and straightforward. If you don't have a contract, that's the only factual issue. If you don't have a contract, you can't bring implied warranty claims. In Roth, for example, the plaintiff alleged and pled that General Motors knew of the purpose that the automobile owners were going to use their cars. They relied on what General Motors told them and General Motors' skill and judgment. Those things were all alleged in Roth, and the Illinois Supreme Court said that didn't constitute an exception. The rule is the rule, and it's clear. And, you know, again, this goes without saying, but it is not as if they have no remedy against Quad County. You know, we're not arguing that their entire case in chief should be dismissed with prejudice. They just simply can't bring the claims that they've brought here in this instance. No questions. Ms. Long, Justice Cain, do you have any questions, final questions? No final questions, thank you. All right, thank you, counsel. First of all, thank you for working with us to make sure this all got done properly. Obviously, we will take the matter under advisement. We will issue an order in due course.